IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KIMBERLY CARTER, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | CASE NO.: |
| V. ) | |
| ) | |
| DYNAMIC EDUCATIONAL ) | PLAINTIFF DEMANDS TRIAL |
| SYSTEMS, INC., d/b/a DYNAMIC ) | BY STRUCK JURY |
| WORKFORCE SOLUTIONS, ) | |
| ) | |
| DEFENDANT. ) | |

**COMPLAINT FOR DAMAGES**

COMES NOW, the Plaintiff, Kimberly Carter, and files this Complaint for Damages to be answered by the Defendant pursuant to the Federal Rules of Civil Procedure.

**I.     JURISDICTION**

1. This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This is a suit authorized and instituted under the Age Discrimination in Employment Act, 29 U.S.C. § 621, 626(d)(1), et seq. (ADEA).

3. This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

4. This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

## II. ADMINISTRATIVE PREREQUISITES

5. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A)[1].

6. Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## III. PARTIES

7. Plaintiff, Kimberly Carter, ("Plaintiff" or "Carter") is a resident of Montgomery, Montgomery County, Alabama and performed work for the Defendant in the counties composing the Middle District of Alabama during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Middle District of Alabama, Northern Division.

---

[1] Plaintiff intends to file a second EEOC Charge within 180 days of the last discriminatory act for claims of ADA discrimination and/or retaliation.

8. At all times relevant to the allegations in this Complaint, Plaintiff was over the age of forty (40).

9. Defendant Dynamic Education Systems, Inc. d/b/a Dynamic Workforce Solutions ("Defendant" or "DESI") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama.

10. Defendant employed at least fifteen (20) people during the current or preceding calendar year.

## IV. FACTS

11. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

12. Ms. Carter is a person over the age of forty (40), of European Ancestry, colloquially referred to as "White."

13. On or about October 6, 2023, Ms. Carter began her employment with Defendant as an administrative assistant.

14. During Ms. Carter's employment with Defendant she was never disciplined or counseled for her performance.

15. Danyel Slayton was Ms. Carter's supervisor.

16. Slayton is a person of African Ancestry, colloquially referred to as "Black."

17. Prior to being hired, Ms. Carter had applied for a Case Manager position, but was offered the administrative assistant position instead.

18. Ms. Carter was told that her supervisor thought her weight would get in the way of being a Case Manager.

19. Instead, Shantice Hixson was placed in the Case Manager position.

20. Hixson is a person, under the age of forty (40), of African Ancestry, colloquially referred to as "Black."

21. Within the first month that she began her employment with Defendant, Ms. Carter started being harassed by her coworker, Hixson.

22. On Ms. Carter's first or second day of employment, Hixson asked Ms. Carter if she was of mixed race.

23. Some days later, Hixson started talking to Ms. Carter about her boyfriend.

24. The next day, a man came to work to see Hixson and Ms. Carter asked if it was her boyfriend.

25. Hixson became irate and made a complaint to the supervisor about Ms. Carter – stating it was none of her business.

26. Ms. Carter was often alienated from conversations at work and any suggestions she had were shot down.

27. Defendant kept community binders that employees were supposed to be able to get information from to do their roles. However, Hixson locked these binders up in her office preventing Ms. Carter from having access to them.

28. Ms. Carter would sometimes go to Hixson's office to request the binders, but Hixson would often delay opening the door, and appear annoyed at Ms. Carter for requesting to use the binders.

29. On one occasion, Hixson and another employee, Wanda Sole trapped Ms. Carter in her office after Sole and Ms. Carter had a disagreement about taking phone messages.

30. During the situation, Hixson started telling Ms. Carter that something was wrong with her and that she was crazy.

31. On two different occasions, Ms. Carter had to ask Hixson to leave her office because of the way she was treating her, but Hixson would not leave.

32. Often the other employees would huddle up talking at the office or would all go out to lunch together but never included Ms. Carter.

33. Ms. Carter was the only white person in an office holding five employees.

34. Ms. Carter made multiple verbal and written complaints to her supervisor and HR, informing Defendant about the harassment from Hixson, that

she was being alienated, being trapped in her office, that the other employees were in a click that didn't include her.

35. Ms. Carter met with Defendant's HR via video conference on multiple occasions, but Ms. Carter continued to be harassed.

36. In or about August 2024, Ms. Carter moved into the curriculum facilitator position.

37. Right after Ms. Carter transferred to this new position, she was told by Hixson that she better not ask her for anything regarding training.

38. In this new position, Ms. Carter needed access to passwords to do her job, but Hixson would not give her the passwords.

39. Ms. Carter complained to Slayton that she needed these passwords, and Hixson would not give her the passwords.

40. Slayton did not make Hixson give Ms. Carter the passwords, instead Ms. Carter had to go through a delayed process of contacting third parties to retrieve the passwords.

41. In or about November 2024, Ms. Carter again made a complaint to Defendant that she felt like she was being harassed both due to her age and "cultural differences."

42. Ms. Carter also complained that her supervisor made comments about and treated her differently because of her weight.

43. When Ms. Carter made this complaint to HR, she cc'd Slayton on the email.

44. Shortly afterwards, Slayton was overheard telling Hixson that Ms. Carter made a complaint about her and that Hixson should write a complaint against Ms. Carter and press it hard with HR.

45. In or about the end of November 2024, Slayton, announced that she was leaving the employer.

46. At this time, it appeared that Hixson was already aware that Slayton was leaving.

47. After hearing the news, Ms. Carter and some of her coworkers applied for the position that Slayton would be leaving vacant.

48. On or about December 2, 2024, Ms. Carter was informed by Defendant's HR Representatives, Karen LNU and Nancy Kantoff, that she was not selected for the position.

49. Ms. Carter then asked Karen if Hixson was chosen for the position, and was told that it would be revealed later that afternoon.

50. Ms. Carter believed that this response confirmed her concern that Hixon was chosen for the position, so she complained to Karen that this was a serious problem, because it meant that Defendant was rewarding Hixson for harassing Ms. Carter.

51. Ms. Carter was later informed by Slayton that Hixson was chosen to fill the position.

52. Ms. Carter was more qualified for the role, as she had 30+ years of management experience that Hixson was lacking.

53. Hixson also had multiple formal complaints made against her, including those from Ms. Carter, as well as others.

54. Upon finding out this information, Ms. Carter became upset and informed Slayton that she needed to leave, but would return the next day, and that she was considering turning in her two-weeks' notice at that time.

55. Slayton responded to Ms. Carter that "you don't have to do that anymore."

56. The next day, Ms. Carter sent Slayton a text message, informing her that she just needed time to think, she would be back the following day, and she would be giving her 30 days' notice.

57. Slayton responded to Ms. Carter, "Ok" and told her that she should talk to Karen in HR when she returned.

58. The next day, on or about December 4, 2024, HR informed Ms. Carter that she was terminated since she expressed her displeasure of Hixson being chosen for the position, and that Ms. Carter abandoned her post.

59. Defendant wouldn't even allow Ms. Carter to return to her desk to retrieve her personal items.

## V. CLAIMS

### COUNT I: ADEA FAILURE TO PROMOTE

60. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

61. The Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she was discriminated against based on her age.

62. At all times relevant to the allegations in this Complaint, Plaintiff was over the age of forty (40).

63. Plaintiff sought the position of Office Manager when Danyel Slayton left employment.

64. Defendant denied Plaintiff the position.

65. When Defendant denied Plaintiff a promotion, Plaintiff was over forty (40) years of age and substantially older than Shantice Hixson.

66. Defendant's actions in not promoting Plaintiff, while promoting substantially younger employees under the age 40, violated the ADEA.

67. Because of Defendant's violation of ADEA, Plaintiff has been damaged, suffering loss of pay and benefits.

## COUNT II: ADEA -RETALIATION

68. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

69. The plaintiff has established a convincing mosaic of direct and circumstantial evidence that she was retaliated against based on her age discrimination complaint.

70. Plaintiff was qualified for her position and able to perform the essential functions of the job.

71. In November 2024, Plaintiff engaged in protected activity, when she reported discrimination based on age.

72. Shortly after this complaint, Slayton told Hixson to file a complaint on Ms. Carter and to press it hard with HR.

73. On or about December 2, 2024, Ms. Carter was denied the promotion to Office Manager.

74. On or about December 4, 2024, Defendant terminated Plaintiff's employment.

75. Each of the retaliatory actions took place within close temporal proximity to Ms. Carter's protected activity.

76. Ms. Carter complained Hixson was being rewarded for harassing her and had previously complained Hixson's actions were discriminatory based on her age.

77. HR informed Ms. Carter she was being terminated because she had expressed displeasure of Hixson being chosen for the position.

78. Each of these retaliatory incidents would dissuade a reasonable person in the plaintiff's position from filing an EEOC Charge.

79. But for Plaintiff's protected activity, Defendant would have retained Plaintiff in her position as a curriculum facilitator.

80. But for Plaintiff's protected activity, Defendant would have promoted Plaintiff to the supervisor position.

81. Defendant violated the ADEA by facilitating complaints against Plaintiff, and by failing to promote and terminating Plaintiff for engaging in protected activity.

82. Defendant violated the ADEA by not promoting Plaintiff for engaging in protected activity.

83. Because of Defendant's violation of the ADEA, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

### COUNT III: TITLE VII – RACE DISCRIMINATION – FAILURE TO PROMOTE

84. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

85. The Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she was discriminated against based on her race.

86. Plaintiff is white.

87. Plaintiff was qualified for the position of supervisor.

88. Plaintiff applied for the supervisor position in or about November 2024.

89. Defendant did not promote Plaintiff.

90. Defendant promoted Hixson, who is black, who had less years of experience in management that Plaintiff, and multiple complaints against them for harassing behavior.

91. Defendant's Race was a motivating factor in Defendant's decision not to promote Plaintiff.

92. Because of Defendant's discriminatory decision made in whole or in part because of race, Plaintiff has lost pay and continues to be paid less.

93. Defendant's actions in not promoting/hiring Plaintiff violated Title VII.

## COUNT IV: 42 U. S. C. § 1981- RACE DISCRIMINATION- FAILURE TO HIRE/PROMOTE

94. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

95. The Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she was discriminated against based on her race.

96. Plaintiff is white.

97. Plaintiff was qualified for the position of Case Manager.

98. Plaintiff applied for the Office Manager Position on or about October 6, 2023.

99. Defendant did not hire Plaintiff in the Case Manager role.

100. Instead, Defendant awarded the Case Manager role to Shantice Hixson, an African American.

101. Defendant's decision not to hire Plaintiff in the Case Manager role was made in whole or in part because of her race.

102. Plaintiff was qualified for the position of supervisor/Office Manager.

103. Plaintiff applied for the supervisor/Office Manager position on or about November 2024.

104. Defendant did not promote Plaintiff.

105. Instead, Defendant promoted Shantice Hixson, who is black, who had less management experience than Plaintiff, and multiple complaints made against her for harassment.

106. Because of Defendant's discriminatory decision made in whole or in part because of race, Plaintiff has lost pay and continues to be paid less.

107. Defendant's decision to not promote Plaintiff was made, in whole or part, because of her race.

108. Because of Defendant's violation of 42 U. S. C § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

109. Defendant's decision to not promote Plaintiff was made, in whole or part, because of race in violation of 42 U. S. C. § 1981.

## COUNT V: TITLE VII RETALIATION

110. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

111. The plaintiff has established a convincing mosaic of direct and circumstantial evidence that she was retaliated against based on her race discrimination complaint.

112. Plaintiff was qualified for the position and able to perform the essential functions of the job.

113. In or about November 2024, Plaintiff engaged in protected activity, when she reported discrimination based on "cultural differences."

114. Plaintiff was the only white person at the office where she worked.

115. All other employees that worked with Plaintiff were black.

116. Shortly after her complaint, Slayton told Hixson about the complaint and told her to make a complaint against Ms. Carter and press it hard with HR.

117. On or about December 2, 2024, Defendant failed to promote Plaintiff to the role of supervisor.

118. Instead, Defendant promoted the person whom Plaintiff complained was harassing her, and who had far less experience than her.

119. On or about December 4, 2024, Defendant terminated Plaintiff's employment for false reasons as Ms. Carter had not abandoned her job.

120. Plaintiff was told she was being terminated because she expressed her displeasure that Hixson was receiving the job.

121. Plaintiff had complained giving her the position would only reward Hixson for her prior harassment of Plaintiff.

122. Each of these retaliatory incidents occurred within close temporal proximity to her protected activity.

123. Each of these retaliatory incidents would dissuade a reasonable person in the plaintiff's position from filing an EEOC Charge.

124. But for Plaintiff's protected activity, Defendant would have promoted Plaintiff to the position of supervisor.

125. But for Plaintiff's protected activity, Defendant would have retained Plaintiff in the position as a curriculum facilitator.

126. Defendant violated Title VII by failing to promote Plaintiff for engaging in protected activity.

127. Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

128. Because of Defendant's violation of Title VII, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

### COUNT VII: 42 U. S. C. § 1981 RETALIATION

129. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

130. The plaintiff has established a convincing mosaic of direct and circumstantial evidence that she was retaliated against based on her race discrimination complaint.

131. Plaintiff was qualified for the curriculum facilitator position and able to perform the essential functions of the job.

132. Plaintiff was qualified for the supervisor position.

133. In or about November 2024, Plaintiff engaged in protected activity, when she reported discrimination based on "cultural differences."

134. Plaintiff was the only white person at the office where she worked.

135. All other employees that worked with Plaintiff were black.

136. Shortly after this complaint, Slayton told Hixson to make a complaint against Ms. Carter and to press it hard with HR.

137. On or about December 2, 2024, Defendant failed to promote Plaintiff to the role of supervisor.

138. Instead, Defendant promoted the black person whom Plaintiff complained was harassing her, who had less experience than Ms. Carter.

139. On or about December 4, 2024, Defendant terminated Plaintiff's employment.

140. Each of these retaliatory incidents occurred within close temporal proximity to her protected activity.

141. But for Plaintiff's protected activity, Defendant would have promoted Plaintiff to the position of supervisor.

142. But for Plaintiff's protected activity, Defendant would have retained Plaintiff in the position as a curriculum facilitator.

143. Defendant violated 42 U.S.C. § 1981 by not promoting Plaintiff in whole or in part for engaging in protected activity.

144. Defendant violated 42 U. S. C. § 1981 by terminating Plaintiff in whole or in part for engaging in protected activity.

145. Because of Defendant's violation of the 42 U. S. C. § 1981, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

  A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Age Discrimination in Employment Act.

  B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

  C. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981;

  D. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

  E. Award back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

  F. Attorneys' fees and costs;

  G. Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

H.   Any different or additional relief as determined by the Court to which Plaintiff is entitled.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

*/s/ Patricia A. Gill*
_____
Patricia A. Gill

**OF COUNSEL:**

The Workers' Firm
2 20th Street North, Suite 900
Birmingham, Alabama 35203
T: 205.329-6392
trish@theworkersfirm.com

**PLEASE SERVE DEFENDANT AS FOLLOWS**

Dynamic Educational Systems, Inc. d/b/a Workforce Solutions
Care of Registered Agent: Corporation Service Inc.
641 Lawrence St.
Montgomery, AL 36104